NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____

|  |  |
|---|---|
| HOLLY A. BOYLAN, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) Civil Action No. 06-4099 (GEB) |
| v. | ) |
|  | ) **MEMORANDUM OPINION** |
| JACKSON NATIONAL LIFE INSURANCE | ) |
| COMPANY, INC., | ) |
| Defendant. | ) |
|  | ) |

_____

**BROWN, Chief Judge**

This matter comes before the Court upon a Motion for Summary Judgment of Plaintiff Holly A. Boylan ("Plaintiff" or "Holly"), a Motion for Summary Judgment of Defendant Jackson National Life Insurance Company, Inc. ("Defendant" or "Insurer"), and a Motion in Limine of Plaintiff to Strike the Affidavits of Clifford Hale ("Hale") and Rita Menthen ("Menthen"). The Court has reviewed the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court grants Defendant's Motion for Summary Judgment, denies Plaintiff's Motion for Summary Judgment, and dismisses the Motion to Strike the Affidavits of Hale and Menthen as moot.

## I.     BACKGROUND

This dispute arises due to Plaintiff's claim that she is the beneficiary of her deceased husband's life insurance policy and that the Insurer wrongfully refused payment due to its claim that

the policy lapsed and was not properly reinstated.  (Compl.) (Docket Entry No. 1.)  Plaintiff's

husband, Thomas Boylan ("Boylan" or "Decedent"), was the holder of a $3 million life insurance

policy, policy no. 0070434250 ("the policy"), which he purchased from Defendant on February 27,

2001, and in which he designated his wife Holly as its beneficiary.  (Decl. of Eugene Killian, Jr. 26-

38, attach. to Pl.'s Mot. Summ. J.) (Docket Entry No. 19-2 at 26-38.)   The premium payment was

$3,945.00 due annually on or before February 27th.  (Id. at 26.)  According to the policy, there was

a thirty-one day grace period, meaning that should Boylan fail to pay the premium by the due date,

he would have thirty-one more days in which to pay without losing coverage.  Specifically, the policy

provides: "A grace period of 31 days will be allowed for payment of a premium in default.  This

certificate will continue in force during this period.  If death occurs during the grace period, the

unpaid premium on the premium basis then in effect will be deducted from the proceeds of the

certificate." (Id. at 29.)   In the case of a lapse in the policy, it also provides:

> HOW A CERTIFICATE IN DEFAULT MAY BE REINSTATED This
> certificate may be reinstated within five years after the date of any past due premium.
> Reinstatement is subject to:
>
>> 1) receipt of evidence of insurability of the Insured satisfactory to the
>> Company; and
>>
>> 2) payment of all past due premiums with interest from the due date of each
>> premium.
>>
>>> Interest at the rate of 8% per year compounded annually on past due
>> premiums will be payable to the date of reinstatement.

(Id.) (hereinafter referred to as "reinstatement requirements".)

Boylan paid the premium _after_ the February 27th due date every year during the policy's life:

(1) in 2002, payment was received during the grace period on March 25th; (2) in 2003, payment was

received during the grace period on March 25th; (3) in 2004, payment was received during the grace

period on March 26th; and (4) in 2005, payment was received <u>after</u> the expiration of the grace period

on April 22nd.  (Aff. of John Simpson 8-13, attach. to Def.'s Mot. Summ. J.) (Docket Entry No. 20-2

at 8-13.)  In 2005, Defendant sent Boylan a Payment Notice and a Grace Period Notice, and after not

receiving the premium within the grace period, Defendant sent Boylan a Lapse Notice, which

advised that "all coverage under the policy has ended" and extended the offer to reinstate without

additional reinstatement requirements so long as the premium payment was received by April 28,

2005, "during the insured's lifetime."  (<u>Id.</u> at 11-12.)  Boylan thereafter paid the 2005 premium

within the extended time frame.  (<u>Id.</u> at 13.)

Again, in 2006, Boylan did not pay the premium by the due date.  (<u>Id.</u> at 5.)  Therefore,

Defendant sent a Grace Period Notice to Boylan dated March 9, 2006, in which the Defendant

explained that unless payment is received by March 30, 2006, the "policy will lapse and all coverage

. . . will end on March 30, 2006."  (Decl. of Killian, ex. J, attach. to Pl.'s Mot. for Summ. J.) (Docket

Entry No. 19-4 at 11.)  Boylan did not pay the premium by that date, and Defendant sent Boylan a

Lapse Notice dated March 30, 2006, that stated:

> We have not received your payment.
>
> Please note that your policy has now lapsed and that all coverage under this policy
> has ended.
>
> If the amount due is received at the address below during the insured's lifetime and
> before April 28, 2006, the policy will automatically be reinstated and we will waive
> additional requirements.  This offer to reinstate automatically is not a waiver of the
> terms of the policy in the event of any future default of payment of premiums.
>
> Otherwise, you will be required to pay additional unpaid premiums plus interest and
> complete the enclosed Reinstatement Application.  Acceptance of the premium does
> not reinstate the policy; your policy will remain lapsed and no coverage is provided

until this application has been approved by Jackson National Life Insurance Company.

(Id. at 13.)

Boylan electronically transferred the premium amount to Defendant on May 19, 2006. (Docket Entry No. 20-2 at 7.)  Neither party presents any evidence that any communication occurred between the parties until sometime after June 16, 2006.  Defendant issued a check, dated June 16, 2006, for $3,945.00, payable to Boylan, in essence, returning to him his premium; Defendant mailed the check to Boylan on June 20th.  (Docket Entry No. 19-4 at 31; Aff. of Rick Blais, attach. to Def.'s Mot. Summ. J.) (Docket Entry No. 20-4 at 2).)  Thereafter, on Friday, June 30, 2006, the check was deposited into Boylan's bank account and was presented to Jackson National's bank for payment and paid on the following Monday, July 3.  (Docket Entry No. 19-4 at 32; Aff. of Patsy King ¶ 8, attach. to Def.'s Br. Supp. Mot. Summ. J. (Docket Entry No. 20-7 at 3).)  Defendant explains that when it receives a premium on an account that has lapsed, it posts the payment to the company's suspense account, and its policy is to allow fifteen days after its receipt to allow the payee to complete the reinstatement requirements, followed by the Insurer's investigation into the reinstatement requirements and a determination regarding the account's status within thirty days of original receipt. (Aff. of Linda Munson, attach. to Def.'s Mot. Summ. J.) (Docket Entry No. 20-5.)

Boylan died on July 5, 2006.  (Docket Entry No. 1 at 4.)  Holly attempted to make a claim under her husband's life insurance policy by letter dated August 11, 2006.  (Docket Entry No. 19-4 at 34.)  Defendant denied payment in a letter dated August 22, 2006, stating that "this policy is showing inactive" and that "the above contract has terminated due to non-payment of premium; therefore there are no benefits payable to the beneficiary."  (Docket Entry No. 19-4 at 36.)  Holly

filed a Complaint on August 29, 2006, demanding payment. (Docket Entry No. 1.)  These motions

followed.

## II.      DISCUSSION

### A.      MOTIONS FOR SUMMARY JUDGMENT

#### 1.      STANDARD OF REVIEW

A party seeking summary judgment must "show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c);

see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hersh v. Allen Prods. Co. Inc., 789 F.2d

230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor

of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no issue for

trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a

verdict in its favor).  In deciding whether triable issues of fact exist, the court must view the

underlying facts and draw all reasonable inferences in favor of the non-moving party.  Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pa. Coal Ass'n v. Babbitt,

63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

#### 2.      APPLICATION

In respect to Holly's Motion for Summary Judgment and in opposition to Defendant's

Motion for Summary Judgment, Plaintiff argues that because Defendant unconditionally accepted

Boylan's late premium payment, and then held that payment for about a month, Defendant waived

any other requirements for reinstatement of the policy, and as a result, Defendant is liable for

payment following Boylan's death.  She argues that although Defendant, a month later, made Boylan

aware that he would have to address other requirements, Boylan died before he had the opportunity

to address or contest the "belated demand".  (Docket Entry No. 19 at 1.)  Plaintiff also argues that

the Court should find that the numerous letters that Defendant sent to Boylan undermined a strict

interpretation of the policy's language and support the finding of a waiver given Defendant's silence

for a month after receiving and depositing the premium.  (Docket Entry No. 19 at 3-4.)

In opposition to Plaintiff's Motion and in support of its own Motion for Summary Judgment,

Defendant company argues that Plaintiff has failed to cite appropriate authority to support her

arguments, and that under the appropriate statutory framework, Plaintiff's motion must be denied.

(Docket Entry No. 23 at 1.)  It also argues that the month long hiatus between receipt of the late

premium and its return was reasonable.

The Court has subject matter jurisdiction to consider this claim pursuant to 28 U.S.C. §

1332(a)(1).  As such jurisdiction is based upon diversity of citizenship, New Jersey's substantive law

governs; New Jersey's courts are the best authority on New Jersey law.  Erie R.R. Co. v. Tompkins,

304 U.S. 64, 77 (1938).

The New Jersey Legislature enacted a statute specifically addressing the conditions that must

precede the reinstatement of a life insurance policy.  N.J. Stat. § 17B:25-9.  It states:

> the policy will be reinstated at any time within 3 years (or 2 years in the case of
> industrial life insurance policies) from the due date of the first premium in default
> upon written application therefor, the production of evidence of insurability
> satisfactory to the insurer, the payment of all premiums in arrears and the payment
> or reinstatement of any indebtedness to the insurer upon the policy, all with interest
> at a specified rate and which may be compounded as specified.

N.J. Stat. § 17B:25-9.

Therefore, under the statute, when a policy has lapsed, the "insurer has a reasonable amount of time in which to demand proof of insurability and then decide whether to reinstate," and thereafter, if the insured does not provide the insurer with the written application, the evidence of insurability, and all of the premiums in arrears, or if the insurer determines that the insured is no longer insurable, the insurer may deny reinstatement. Glezerman v. Columbian Mut. Life Ins. Co., 944 F.2d 146, 153-54 (3d Cir. 1991). One reason that these reinstatement requirements are in place is that "[a] reinstatement provision in a policy of life insurance contemplates the making of a new contract between the parties, which the insurer is not obligated to do unless satisfied that the original risk is still insurable." Hogan v. John Hancock Mut. Life Ins. Co., 195 F.2d 834, 837 (3d Cir. 1952) (citations omitted); see also Glezerman, 944 F.2d at 155. "[R]einstatement is never effectuated until the insurer acts on the application." Hogan, 195 F.2d at 837.

"The only exception is waiver on the part of, or estoppel against, the insurance company." Glezerman, 944 F.2d at 154. A waiver depends "'upon acts or conduct of the insurer with knowledge of the breach tending to show a recognition of the policy, or an intent to relinquish the right to declare a forfeiture for the known breach,'" and "'[i]t is always open to the assured to show a waiver of policy provisions when the conduct of the insurer gives reasonable ground to the assured, as a layman . . . to believe that such a forfeiture will not be incurred and the assured relies thereon to his prejudice.'" Id. at 153 (citing Bruni v. Prudential Ins. Co., 51 N.J. 408 (1968)). "The issues of waiver and estoppel involve the making of highly factual determinations"; "[a] waiver must 'be clearly established, and will not be inferred from doubtful or equivocal acts or language.'" Van Allen v. Bd. of Comm'rs of the Twp. of Bass River, 211 N.J. Super 407, 410-11 (App. Div. 1986) (citation omitted). For example, "retaining an overdue premium for an extended period of time is

evidence that a policy has been reinstated," thus waiving the additional reinstatement requirements. Glezerman, 944 F.2d at 154.

There is no bright line rule for determining the reasonableness of the time period that a premium has been retained. "The benchmark for determining a reasonable period of time may be a period specified by the insurance contract." Id. (citing Hogan, 195 F.2d at 838). To this end, "an insurance policy should be interpreted according to its plain and ordinary meaning." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992) (citation omitted). In addition, "[w]hen terms in an insurance policy are included by statutory mandate . . . the ordinary rules of statutory construction apply"; courts must enforce the policy as written. Paul Revere Life Ins. Co. v. Hass, 137 N.J. 190, 199 (1994).

For example, in Hogan, the court noted that the life insurance policy specifically allowed for a sixty day period during which the insurance company could determine whether to reinstate, and therefore, any inaction or retention of the premium during those sixty days could not be considered a waiver. 195 F.2d at 838. In Glezerman, on the other hand, the court addressed whether the inaction of the insurance company for slightly over sixty days was reasonable under New Jersey law, and it held that where the insurance policy did not provide for a particular period of action in the policy contract, and where the claimant did not provide evidence that the insurer was either "dilatory or . . . lackadaisical" in responding, and where the claimant did not allege detrimental reliance on that inaction, the withholding of the premium for slightly over sixty days without action was reasonable and did not constitute a waiver of the reinstatement requirements; thus, summary judgment was appropriate in favor of the insurer. 944 F.2d at 154-55.

Here, the parties do not dispute that the policy lapsed, and they do not dispute that the

contract mirrors the statutory requirements pursuant to N.J. Stat. § 17B:25-9 for reinstatement after such a lapse. The only issue in dispute is whether or not Boylan properly reinstated his life insurance policy after allowing it to lapse. Based on the undisputed facts, Boylan did not properly reinstate the policy. The company told him several times the process for reinstatement, and Boylan did not comply.

Further, although Plaintiff urges this Court to find that the Insurer waived the reinstatement requirements, there is no basis for waiver as a matter of law. Plaintiff has neither alleged ambiguity in policy, nor has Plaintiff established that the Insurer intentionally relinquished a known right.

Plaintiff argues that the Insurer's delay in communicating with Boylan constitutes a waiver even though the Insurer had previously informed him that payment after April 28th would require him to "complete the enclosed Reinstatement Application," which he did not do, and approval of the application by the company. The Court concludes that under the undisputed facts, the time between the date that Boylan electronically transferred the late premium and the date that Defendant issued and mailed a check to return that premium to Boylan was not unreasonable. Although the situation addressed in Glezerman is not identical to that at hand, the discussion is instructive in that there, the court considered the plaintiff's waiver argument and the factual circumstances, and it determined that a period of slightly more than sixty days was not unreasonable. It follows, therefore, that if this Court only considered the actual time period of the delay, then it could conclude that the time period here is also not unreasonable.

However, the Glezerman court indicated that a more in-depth examination of the circumstances is warranted. Defendant neither engaged in a course of conduct constituting a waiver of the requirements, undermined those reinstatement requirements by its delay in response, nor did

9

it expressly waive the reinstatement requirements by its extension of a late payment offer.  Plaintiff's

arguments are without merit because of their fatal flaw: Plaintiff has failed to provide evidence of

Insurer's "intent to relinquish the right" to receive the reinstatement requirements, or evidence to

show that the Insurer acted "with knowledge of the breach," and therefore, the claim must fail as a

matter of law.  Glezerman,  944 F.2d at 154.  Although Plaintiff has alleged that Defendant could

have responded quicker given its computer system's capabilities, Plaintiff has not shown that the

Defendant's delay was "dilatory or lackadaisical" or shown that the delay was an intentional

relinquishment of a known right.  See id. at 154. The undisputed facts require the contrary

conclusion.  The Insurer did not intend to relinquish its contractual rights.  Therefore, this Court

concludes that the month-long retention of the premium without further communication was not

unreasonable, given that the Insurer had previously communicated with Boylan regarding the

requirements for reinstatement and given that the requirements were prominently and unambiguously

included in the original policy.

Plaintiff seeks to differentiate the opinion in Glezerman and this Court's previous unreported

decision in Russo v. Guardian Ins. Co., Inc., No. 96-3048 (D.N.J. Aug. 18, 1997).  Plaintiff also

urges that the Court liken the instant circumstances to others involving different types of insurance

policies and the reinstatement procedure for health insurance policies outlined in N.J. Stat. § 17B:26-

7 and conclude that Defendant's actions constitute a waiver of the reinstatement requirements.

However, the statute for a health insurance policy's reinstatement differs from that for a life

insurance policy's reinstatement materially in that N.J. Stat. § 17B:26-7, the statute that governs the

reinstatement of health insurance policies, provides:

If any renewal premium be not paid within the time granted the insured for payment,

> a subsequent acceptance of premium by the insurer or by any agent duly authorized
> by the insurer to accept such premium, without requiring in connection therewith an
> application for reinstatement, shall reinstate the policy.

This language has not been included in N.J. Stat. § 17B:25-9, which governs the reinstatement of life insurance policies.  Both statutes were enacted by the New Jersey State Legislature at the same time, see L. 1971, c. 144, § 17B:25-9 and §17B:26-7.  Therefore, this Court declines to follow Plaintiff's analogies and instead interprets the statutes' plain meaning, and infers that the Legislature purposely did not include the language regarding automatic reinstatement in the life insurance statute.  For this reason, this Court rejects Plaintiff's arguments regarding the applicability of the cases cited to support the argument to the contrary.

Plaintiff also argues that Defendant's eventual return of the tendered premium and Boylan's acceptance of it should have no bearing on whether Defendant indeed waived the reinstatement requirements.  However, as a matter of law, these facts have no impact under the law.  Unfortunately, Boylan failed to take advantage of the offer to waive the reinstatement requirements prior to April 28, 2006. Likewise, the Court does not find merit in Plaintiff's argument that due to Defendant's offers in 2005 and 2006 to give Boylan the option to reinstate the lapsed life insurance policy in an additional month without securing the other reinstatement requirements, it necessarily indicates a course of conduct of leniency and waiver of the policy's express terms.  Defendant was entitled to extend a new offer to a policy holder in contemplation of the new contract.  See Glezerman, 944 F.2d at 155 (providing that reinstatement contemplates the making of a new contract).

Finally, Plaintiff argues that because Boylan died "only two days after depositing the check" he "was not given sufficient time to comply with [Defendant's] belated reinstatement requirements, or to contest them" and that the Court should therefore find that these facts give rise to a disputed

issue of material fact.   However, the Court rejects this argument because the reinstatement requirements were not "belated."   They were expressly agreed upon by the parties in the original contract for life insurance, they were referenced in the Lapse Notice dated March 30, 2006, and they are statutorily addressed in N.J. Stat. § 17B:25-9.

In short, although this Court acknowledges that Plaintiff has surely endured a tragic and emotional event, the Court concludes that Boylan did not reinstate his policy, and there is no basis to find that there was a waiver of the reinstatement requirements as a matter of law.   For these reasons, the Court grants Summary Judgment in favor of the Defendant, and denies Plaintiff's Motion for Summary Judgment.

### B.      MOTION TO STRIKE AFFIDAVITS

Having granted summary judgment to Defendant, and having not relied upon either affidavit at issue in Defendant's Motion to Strike the Affidavits of Hale and Menthen in reaching its decision regarding Plaintiff's Motion for Summary Judgment, the Court dismisses Defendant's Motion to Strike the Affidavits of Hale and Menthen as moot.

### III.    CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment. This Court also denies Plaintiff's Motion for Summary Judgment and dismisses the Motion to Strike the Affidavits of Hale and Menthen as moot.   An appropriate form of Order accompanies this Opinion.

Dated: September 30, 2008

                                         __s/ Garrett E. Brown, Jr._____
                                         GARRETT E. BROWN, JR., U.S.D.J.